IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HETTY A. VIERA, as the        :   CIVIL ACTION
executrix of THE ESTATE OF    :   NO. 09-3574
FREDERICK A. VIERA, and HETTY :
A. VIERA, individually,       :
                              :
          Plaintiffs,         :
                              :
          v.                  :
                              :
LIFE INSURANCE COMPANY OF     :
NORTH AMERICA,                :
                              :
          Defendant.          :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         April 6, 2010
_____

_____Plaintiff Hetty Viera ("Plaintiff") brings this ERISA

action against Defendant Life Insurance Company of North America

("LINA") seeking payment of benefits under an accidental death

and dismemberment policy arising from the death of her husband.

Before the Court are cross-motions for summary judgment.  For the

reasons that follow, Defendant's motion for summary judgment will

be granted and Plaintiff's motion for summary judgment will be

denied.___


I.    **BACKGROUND**

      A.    Facts

            This action arises pursuant to the Employee Retirement

Income and Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).[1]

On October 14, 2008, Frederick Viera ("Viera") was involved in a motorcycle accident in Grand Junction, Colorado. Viera suffered serious injuries as a result of the accident. He was treated at St. Mary's Hospital and Medical Center ("St. Mary's") for approximately three hours and was subsequently pronounced dead.

On the date of his death, Viera maintained two insurance policies, which were purchased on his behalf by his employer, Hornbeck Offshore Operators, LLC. These insurance policies consisted of an employer-provided life insurance policy, and an employer-provided accidental death and dismemberment policy (the "AD & D Policy"). The claims administrator for each of these policies is Defendant LINA. Only the AD & D Policy is the subject of the instant litigation.

Viera had a pre-existing chronic condition known as atrial fibrillation prior to LINA's issuing the AD & D Policy. (Def.'s Mot. Summ. J. Ex. C 123-25, 210.) As part of the medical treatment for his atrial fibrillation, Viera received a medication called Coumadin (also known as Warfarin).[2] (See id.

_____

[1] The Employee Retirement Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B), allows an individual to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[2] Coumadin, known generically as warfarin sodium, is the brand name of a blood-thinning drug prescribed for the prevention and treatment of blood clots. In re Warfarin Sodium Antitrust

135-38.)

Plaintiff is Viera's wife and the executrix of his estate. On November 3, 2008, Plaintiff submitted a claim for benefits under the AD & D Policy to LINA, but this claim was denied.[3] LINA's position is that Viera's death was not a covered event under the express terms of the AD & D Policy.

The relevant provisions of the AD & D Policy are as follows:

- "Covered Loss," defined as "A loss that is all of the following:
1. the result, directly and independently of all other causes, of a Covered Accident;
2. one of the Covered Losses specified in the Schedule of Covered Losses;
3. suffered by the Covered Person within the applicable time period specified in the Schedule of Benefits.

(Id. 27.)

- "Covered Accident," defined as:

A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or a Covered Loss and meets all of the following conditions:
1. occurs while the Covered Person is insured under this Policy;
2. is not contributed to by disease, Sickness, mental or bodily infirmity;
3. is not otherwise excluded under the terms of this Policy.

---

Litig., 214 F.3d 395, 396 (3d Cir. 2000).

[3]     Plaintiff also submitted a claim under Viera's life insurance policy and received $350,000 from LINA on account of this claim.

(Id.)  LINA does not contest that death represents a "Covered Loss" or that Plaintiff satisfies the criteria as a "Covered Person" under the AD & D Policy.

The AD & D Policy contains a provision that specifically excludes a claim for benefits "which, directly or indirectly, in whole or in part, is caused by or results from . . . [s]ickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food."  (Id. 32.)  LINA contends that this medical condition exclusion (the "Medical Condition Exclusion") dictates that Viera's loss was excluded from coverage under the AD & D Policy.  More specifically, LINA denied Plaintiff's benefit claim on the ground that Plaintiff's Coumadin treatment complicated Viera's medical treatment and constituted a contributing factor to his death after his accident.

B.   Procedural History

On July 10, 2009, Plaintiff commenced this action by filing a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania.  On August 5, 2009, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441. Plaintiff filed an amended complaint on October 16, 2009. Pursuant to a scheduling order issued by the Court, Defendant and

Plaintiff filed motions for summary judgment on November 5, 2009, and December 7, 2009, respectively.  These motions are now ripe for adjudication.

## II.  LEGAL STANDARD

### A.  Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The "mere existence" of disputed facts will not result in denial of a motion for summary judgment; rather there must be "a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Liberty Lobby, 477 U.S. at 248.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Authority of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden

of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

The guidelines governing summary judgment are identical when addressing cross-motions for summary judgment.  <u>See</u> <u>Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008).  When confronted with cross-motions for summary judgment "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  <u>Schlegel v. Life Ins. Co. of N. Am.</u>, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

B.    <u>ERISA Standard of Review</u>

Before proceeding to the merits of the parties' cross-motions for summary judgment, the Court must determine the appropriate standard of review for LINA's decision to deny benefits under the AD & D Policy.

ERISA does not specify a standard of review for an action brought under § 1132(a)(1)(B).  <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 437 (3d Cir. 1997).  The Supreme Court has established that "a denial of benefits challenged under §

1132(a)(1)(B) is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). Where the plan administrator is granted such discretion, the Court must review the administrator's denial of a claim for benefits using an arbitrary and capricious (or abuse of discretion) standard of review. <u>See id.</u> at 111; <u>Metropolitan Life Ins. Co. v. Glenn</u>, -- U.S. ---, 128 S. Ct. 2343, 2347-48 (2008) (clarifying that where the plan gives the administrator discretionary authority, the appropriate standard of review is abuse of discretion); <u>Doroshow v. Hartford Life and Accident Ins. Co.</u>, 574 F.3d 230, 233 (3d Cir. 2009).[4] Under this abuse of discretion standard, the decision of the plan administrator may be overturned only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Abnathya</u>, 2 F.3d at 45 (internal quotation marks and citation omitted); <u>see also</u> <u>Wernicki-Stevens v. Reliance Std.</u>

---

[4]    Prior Third Circuit case law referenced the "arbitrary and capricious" standard for review whereas the Supreme Court's decision in <u>Glenn</u> described this standard as "abuse of discretion. Although the Third Circuit has recognized that for purposes of an ERISA action, these standards of review are practically identical. <u>Estate of Schwing v. Lilly Health Plan</u>, 562 F.3d 522, 526 n.2 (3d Cir. 2009) (citing <u>Abnathya v. Hoffmann-La Roche, Inc.</u>, 2 F.3d 40, 45 n.4 (3d Cir. 1993)). This Memorandum will employ the term "abuse of discretion" so as to be congruent with the <u>Glenn</u> decision.

Life Ins. Co., 641 F. Supp. 2d 418, 422 (E.D. Pa. 2009).

In accordance with the Supreme Court's instruction in Glenn, the Court must consider any structural conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion. See Schwing, 562 F.3d at 526 (quoting Glenn, 128 S. Ct. at 2351).[5] In other words, the potential existence of a conflict of interest is to be analyzed as part of the deferential abuse of discretion standard, but it does not alter the standard to be applied.[6]

---

[5] A structural conflict arises when an entity "both determines whether an employee is eligible for benefits" and also pays benefits under the plan. Glenn, 128 S. Ct. at 2348.

[6] Plaintiff posits, and LINA does not contest, that a conflict of interest is present here because LINA both determines eligibility for benefits and pays for those benefits out of its own funds. See Schlegel, 269 F. Supp. 2d at 617 (recognizing that this scenario presents an inherent conflict of interest). Prior to the Supreme Court's decision in Glenn, the Third Circuit applied a "sliding scale" approach first articulated in Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377 (3d Cir. 2000). Under this sliding scale approach, "courts first consider the evidence that the administrator acted from an improper motive and heighten their level of scrutiny appropriately. Second, they review the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it. If so, its decision stands; if not, the court steps into the shoes of the administrator and rules on the merits itself." Post v. Hartford Ins. Co., 501 F.3d 154, 161 (3d Cir. 2007). Following the decision in Glenn, the Third Circuit has recognized that the sliding scale approach is no longer valid, and that structural conflicts constitute just one factor of many that inform the Court's review of an ERISA decision. See Schwing, 562 F.3d at 525. Based on the record presently before the Court, a conflict of interest exists for LINA, and will be considered if the abuse of discretion standard applies.

In order to apply the proper standard, the Court must determine whether LINA exercised discretionary powers under the AD & D Policy. "Whether a plan confers discretionary powers upon a fiduciary depends upon the terms of the policy." Luby v. Teamsters Health, Welfare and Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991); see also Post v. KidsPeace Corp., 98 F. App'x 116, 120 (3d Cir. 2004) (non-precedential opinion) ("To determine the proper standard of review, we begin with the language of the plan." (citing Luby, 944 F.2d at 1180)). Discretionary powers may be implied by the terms of the plan. Luby, 944 F.2d at 1180 (citing De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir. 1989) (no "magic words," such as "discretion is granted . . . ," need be expressly stated in order for the plan to accord the administrator discretion to interpret plan terms and to hear and decide disputes between persons alleging themselves to be beneficiaries, so long as the plan on its face clearly grants such discretion)).

The relevant language of the AD & D Policy provides:

**Proof of Loss**
Written or authorized electronic proof of loss satisfactory to Us [LINA] must be given to Us [LINA] at Our office, within 90 days of the loss for which claim is made.

(Def.'s Mot. Summ. J. Ex. C 34.) The key phrase relied upon by both parties is that the proof of loss must be "satisfactory to Us," i.e., LINA. Defendant argues that this language vests it

with the discretion to determine whether the proof submitted in support of a benefits claim is sufficient. Plaintiff responds that de novo review is required by this language, although Plaintiff appears to concede that this language does vest LINA with discretion as to the quantum of proof necessary to substantiate a submitted claim. Plaintiff states that the above-quoted language "indicates that the proof of lost [sic] must be satisfactory to Defendant LINA. This language clearly states that LINA shall be the entity determining whether the loss is satisfactory to it." (Pl.'s Resp. Def.'s Mot. Summ. J. 8.)

Courts, both inside and outside of the Third Circuit, have considered similar policy language that proof of loss be "satisfactory" and reached differing conclusions. Compare Adams v. Life Ins. Co. of N. Am., No. 08-2683, 2009 WL 2394150, at *5-6 (E.D. Pa. Aug. 3, 2009) (Padova, J.) (policy language that "[s]atisfactory proof of Disability must be provided to the Insurance Company" did not confer discretionary authority); Farina v. Temple Univ. Health Sys. Long Term Disability Plan, No. 08-2473, 2009 WL 1172705, at *10 (E.D. Pa. Apr. 27, 2009) (Schiller, J.) (language that "[s]atisfactory proof of Disability must be provided to the Insurance Company" requires de novo review); Thomas v. Oregon Fruit Prods. Co., 228 F.3d 991, 994 (9th Cir. 2000) (explaining that the requirement that a plan participant provide "satisfactory written proof" of disability,

without more, is ambiguous and accordingly, does not confer discretion), with Schlegel, 269 F. Supp. 2d at 616-17 (language that claimant must provide "satisfactory proof of disability before benefits will be paid" warranted review under abuse of discretion standard); Leonard v. Educators Mut. Life Ins. Co., 620 F. Supp. 2d 654, 668 (E.D. Pa. 2007) ("The requirement that the proof of loss 'must be satisfactory to us' is sufficient implied reservation of discretion for the plan administrator to determine eligibility for benefits; thus, the arbitrary and capricious standard of review applies."); Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1233-34 (11th Cir. 2006) (policy language requiring claimant to "submit[ ] satisfactory proof of Total Disability to us" qualified for abuse of discretion standard).  The source of inconsistency among cases applying ostensibly identical language is that the relevant language may be interpreted as requiring that proof that is independently adequate be sent to the insurance company or that the proof that is sent must be adequate to the insurance company. See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 269-70 (4th Cir. 2002) (examining language "We will pay a Monthly Benefit if the Insured . . . submits satisfactory proof of Total Disability to us," and concluding that this language could be interpreted as stating only to whom the proof must be submitted, not who must be satisfied).

The somewhat obvious, yet critical, distinction to be drawn among these cases is whether the operative language

requires that a claimant submit "satisfactory proof" or "satisfactory proof to us," meaning the plan administrator itself. This distinction was explained adroitly by the First Circuit in Brigham v. Sun Life of Canada:

> Circuits that have considered similar language view the 'to us' after 'satisfactory' as an indicator of subjective, discretionary authority on the part of the administrator, distinguishing such phrasing from policies that simply require 'satisfactory proof' of disability, without specifying who must be satisfied.

317 F.3d 72, 81 (1st Cir. 2003). Although the Third Circuit has not addressed this precise question, based on the reasoning set forth above, courts of appeal analyzing language requiring that the proof submitted by a claimant be "satisfactory to" the plan administrator have found that abuse of discretion is the appropriate standard. See, e.g., Nance v. Sun Life Assur. Co. of Canada, 294 F.3d 1263, 1267-68 (10th Cir. 2002) ("'Satisfactory to Sun Life' . . . adequately conveys to the Plan participants and beneficiaries that the evidence of disability must be persuasive to Sun Life."); Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002) (describing plan as stating that "proof must be satisfactory to [the administrator]" and applying abuse of discretion standard); Tippitt, 457 F.3d at 1233-34. Cf. Feibusch v. Integrated Device Tech., Inc., 463 F.3d 880, 883-84 (9th Cir. 2006) (concluding that policy language that proof of a disability claim "must be satisfactory to Sun Life" does not unambiguously provide discretion to the plan

administrator sufficient to merit deferential review); <u>Schwartz</u>
<u>v. Prudential Ins. Co. of Am.</u>, 450 F.3d 697, 698-99 (7th Cir.
2006) (language requiring proof "satisfactory to" plan
administrator, standing alone, does not confer discretionary
authority).

This distinction is apposite in this case as the
AD & D Policy does not simply require that satisfactory proof be
provided to LINA, but that the proof provided be satisfactory <u>to</u>
LINA i.e., the evidence in support of the claim must be
satisfactory according to LINA's standards rather than merely
being "satisfactory" in a general sense.[7]  Indeed, Plaintiff
herself concedes "[t]his language clearly states that LINA shall
be the entity determining whether the loss is satisfactory to
it." (Pl.'s Resp. Def.'s Mot. Summ. J. 8.)  The Court concludes
that the relevant policy language presents a clear grant of
discretionary authority to LINA in deciding whether sufficient
proof to support a claim has been submitted to shift the Court's
review from <u>de novo</u> to the deferential abuse of discretion

_____

[7]     A useful tool in understanding this distinction would
be to remove the term "satisfactory" from the clause and see
whether the clause can still be read logically.  In this case,
removing the word "satisfactory" would result in the following:
"Written or authorized electronic proof of loss [... ] to Us must
be given to Us at Our office, within 90 days of the loss for
which claim is made."  Therefore, removing the term
"satisfactory" before the term "to Us" creates a nonsensical
reading.

standard.  In applying this deferential standard, the Court is to

"'take account of several different considerations of which a

conflict of interest is one,' and reach a result by weighing all

of those considerations."  Schwing, 562 F.3d at 526 (quoting

Glenn, 128 S. Ct. at 2351).


**III.  DISCUSSION**

    A.   <u>Defendant LINA's Motion for Summary Judgment</u>

       As an initial matter, the parties have presented

minimal information concerning LINA's structural conflict of

interest.  Defendant has not disputed Plaintiff's assertion that

a conflict of interest is present because LINA both funds and

administers benefits under the AD & D Policy.  As the parties

have produced no evidence to contradict this assertion, the Court

considers this as a factor in applying the abuse of discretion

standard in accordance with Glenn.

       The Court in Glenn contemplated that, when a conflict

of interest is present, judges will "take account of several

different considerations of which a conflict of interest is one."

Glenn, 128 S. Ct. at 2351.  The Court expounded on this point,

stating that "where circumstances suggest a higher likelihood

that [the conflict] affected the benefits decision," its

importance as a factor increases, thereby increasing the

likelihood that an abuse of discretion occurred.  <u>Id.</u>[8]

Plaintiff does not point to, and the Court cannot discern, any circumstances, absent the structural conflict itself, which make this factor particularly salient in this case. In accordance with <u>Glenn</u>, the Court concludes that nothing in the record presently before it tends to make the conflict of interest a particularly important factor in this case.  Applying the <u>Glenn</u> abuse of discretion standard, the conflict of interest does not weigh in favor of finding that LINA abused its discretion.

Moving beyond the structural conflict issue, LINA argues that the decision to deny Plaintiff's claim under the AD & D Policy represents a reasonable exercise of discretion based on the available evidence.  LINA submits that because Viera's Coumandin treatment was a contributing factor, at least in part, to his death, the Medical Condition Exclusion contained in the AD & D Policy dictates that Viera's death was not a "Covered Loss" and warrants denial Plaintiff's claim.

In support of its decision, LINA relies upon the following information contained within its claim file.

1.    <u>The Initial Treatment Records</u>

_____

[8]    By way of example, the Supreme Court explained that an administrator's history of biased claims administration would heighten the importance of the conflict, whereas the conflict is less of a factor where active steps have been taken to reduce potential bias, such as creating a wall between claims administrators and finance personnel.  <u>Id.</u>

LINA's position is that the treatment records from St. Mary's indicate that Viera's thinning blood, attributable to his Coumadin treatment, affected treatment for Viera's injuries and ultimately contributed to his death.  LINA cites to the fact that doctors treating Viera were dealing with blood pressure and bleeding problems, and were forced to take measures to facilitate the clotting of Viera's blood, such as administering Vitamin K and fresh frozen plasma.  (Def.'s Mot Summ. J. Ex. 97-109.)  More specifically, the "final diagnosis" prepared by Dr. Michael Bradshaw, M.D., summarizes the cause of death as follows:

> **Final Diagnosis:** Multiple injuries in a head-on motorcycle versus car accident with severe pelvic fractures, lower extremity fractures, and a fully Coumadinized patient due to atrial fibrillation.  He eventually expired because of unresponsiveness to blood pressure and cardiac output.

(Id. 103.) (emphasis added).  LINA submits that these records confirm that Viera's use of Coumadin adversely affected his medical treatment, and therefore represents an indirect cause of his death.

### 2.  The Post-Mortem Autopsy Report

In further support of its decision to deny Plaintiff's claim, LINA cites to a post-mortem autopsy report prepared by Robert A. Kurtzman, D.O. (the "Autopsy Report").  The Autopsy Report lists the "immediate cause of death" as "multiple injuries," but also lists "atrial fibrillation" under the heading "other significant conditions."  (Id. 183.)  The Autopsy Report

notes that Viera's "significant medical history included diabetes mellitus and atrial fibrillation (treated with Coumadin)." (Id.)[9]

### 3. The Independent Medical Review

LINA engaged Dr. Mark H. Eaton, M.D. ("Dr. Eaton") to review Viera's medical records and issue a second opinion as to the causes of Viera's death (the "Second Opinion").[10] In preparing the Second Opinion, Dr. Eaton reviewed the Emergency Department records from St. Mary's, the official death certificate and post-mortem report, and records provided by Viera's treating physician. (Id. 71-72.) After reviewing the relevant records, Eaton issued the Second Opinion, which concluded:

> To a reasonable degree of medical certainty, Mr. Viera's Coumadin therapy significantly contributed to his death.

---

[9] LINA further cites to the Death Certificate prepared by Dr. Kurtzman which lists "arteriosclerotic cardiovascular disease" under the heading "other significant conditions - conditions contributing to death but not related to case in Part I." (Id. 173.) Although not directly relevant to Viera's Coumadin treatment, LINA argues that this nonetheless supports its position that Viera's death resulted, at least in part, from a medical condition other than the injuries sustained from the accident, and supports LINA's decision to deny Plaintiff's benefit claim based on the Medical Condition Exclusion.

[10] Dr. Eaton is Board Certified in Internal Medicine with a Specialty Certificate in Cardiovascular Disease. (Id. 73.) Dr. Eaton is employed by Medical Evaluation Specialists, and certified in his report that his review was entirely independent and that he does not have any relationship or affinity with, or financial interest in LINA. (Id.)

The cause of Mr. Viera's death was attributed to the traumatic pelvic fracture which resulted in clinically significant pelvic and retroperitoneal hemorrhage complicated by the fact that the claimant was systematically anti-coagulated. Mr. Viera was at therapeutic pro-tie and INR upon hospital presentation. The claimant was taking Coumadin to prevent thromboembolic event given atrial fibrillation. Despite aggressive fluid and blood product resuscitation hemodynamic instability persisted resulting ultimately in cardiac arrest.

Potential adverse reactions to Coumadin are known to include fatal or nonfatal hemorrhage from any tissue or organ as consequence of the anticoagulant effect. The signs, symptoms, and severity will vary according to the location and degree or extent of the bleeding.

In my opinion the claimant's Coumadin therapy significantly contributed to his death as it is more than likely he would have survived the traumatic pelvic fracture if he had not been fully anti-coagulated at the time of his injury. In my opinion the aggressive resuscitation efforts including emergent angiography and embolization procedure would have resulted in hemodynamic stability if he had not been taking Coumadin.

(Id. 72-73.)

Based on the sum of all the evidence recited above, LINA contends that its decision to deny benefits on the ground that Viera's Coumadin treatment was a contributing factor to his death should be upheld under the abuse of discretion standard. LINA argues that the medical evidence cited above provides a reasonable foundation for its conclusion that the Medical Condition Exclusion applies and justifies its decision to deny Plaintiff's claim because Viera's death resulted, at least in part, from the Coumadin treatment.

Plaintiff responds that genuine issues of material fact exist as to whether the Medical Condition Exclusion applies to

preclude summary judgment in LINA's favor.  Specifically, Plaintiff argues that LINA's decision constituted an abuse of discretion on two grounds.  One, Plaintiff argues that Dr. Eaton's Second Opinion should be discounted because Dr. Eaton reviewed only medical documentation relating to Viera's treatment and death and did not personally observe Viera's injuries.  Two, Plaintiff argues that a genuine issue of material fact exists because Plaintiff's expert opinion report contradicts the conclusion reached by LINA's expert Dr. Eaton.  Each of these arguments is inapposite.

First, the fact that Dr. Eaton did not personally examine Viera's injuries does not undermine the credibility of his medical conclusions.  Importantly, the expert report submitted by Plaintiff from Dr. Aaron J. Gindea, M.D. ("Gindea"), states that in preparation of his expert report, Gindea reviewed only the Second Opinion prepared by Dr. Eaton and the medical documents listed in Dr. Eaton's Second Opinion.  Therefore, as Plaintiff's own expert did not examine Viera's injuries personally before reaching his conclusion, it cannot be said that Dr. Eaton's failure to personally observe Viera's injuries prior to issuing the Second Opinion undermines the weight to be afforded to it by LINA in denying Plaintiff's claim.

Second, the fact that Plaintiff's expert Gindea reached a contrary conclusion as to whether Viera's Coumadin treatment

was a contributing factor to his death does not dictate that LINA abused its discretion. In the expert report prepared for Plaintiff, Gindea reached the following conclusion:

> Unfortunately, patients involved in motor vehicle accidents with extensive trauma and multiple complex fractures like the one suffered by Mr. Viera, especially in an unprotected vehicle like a motorcycle, often die whether they are taking warfarin [Coumadin] or not. The hospital staff did everything possible to reverse the warfarin effect and limit the bleeding. Although the presence of warfarin did make the bleeding worse, it is unreasonable to propose that, if not for the warfarin, the patient likely would have survived. Therefore, the patient's death WAS NOT "directly or indirectly, in whole or in part, caused or resulted from the warfarin therapy.["] Rather, it was the result of severe trauma from a motor vehicle accident which likely would have been fatal in the presence of absence of warfarin.

(Pl's Mot. Summ. J. Ex. B.) Plaintiff's expert report itself concedes that the Coumadin "did make the bleeding worse," and that the "hospital staff did everything possible to reverse the [Coumadin] effect and limit the bleeding." Thus, it is questionable whether Plaintiff's expert report actually refutes Dr. Eaton's Second Opinion that the Coumadin was a contributing factor to Viera's death.

The Court need not resolve this question, however, as the fact that a conflicting medical opinion exists, standing alone, does not warrant a conclusion that LINA abused its discretion in denying Plaintiff's claim. In the ERISA context, courts have recognized that the decision of a plan administrator will not be deemed an abuse of discretion merely because it

chooses among competing medical opinions.  See Black & Decker
Disability Plan v. Nord, 538 U.S. 822, 831-34 (2003) (reversing
summary judgment in favor of plaintiff awarded solely on the
basis that the plan administrator credited its own doctor's
evaluation of the claimant's medical records over that of the
treating physician); Orvosh v. Program of Group Ins. for Salaried
Employees of Volkswagen of Am., Inc., 222 F.3d 123, 127-31 (3d
Cir. 2000) (concluding that administrator's decision to terminate
benefits under ERISA was not arbitrary and capricious where it
was based on the recommendations of its physicians and health
care workers despite the view of the claimant's treating
physician that the claimant was totally disabled); Slomcenski v.
Citibank, N.A., 432 F.3d 1271, 1279-80 (11th Cir. 2005)
(upholding district court's denial of summary judgment based on
plan administrator's adopting the position of several expert
medical opinions in spite of conflicting expert opinions, and
stating "[g]iving more weight to the opinions of some experts
than to the opinions of other experts is not an arbitrary or
capricious practice").  Therefore, LINA's decision to adopt the
conclusions of Dr. Eaton's report and ignore the conclusions
reached in Plaintiff's expert report, without more, does not
demonstrate that LINA's decision "is clearly not supported by the
evidence in the record or the administrator has failed to comply
with the procedures required by the plan." Smathers v.

Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002) (internal quotation marks and citation omitted).

Based on the above, LINA did not abuse its discretion in denying Plaintiff's claim for benefits as this decision was founded on reasonable medical evidence in the record.[11]

B.    Plaintiff Viera's Motion for Summary Judgment

Plaintiff argues that LINA's decision to deny her claim should not be upheld under either de novo review or abuse of discretion review. Plaintiff asserts two primary arguments in support of her motion for summary judgment: (1) the proper interpretation of the AD & D Policy dictates that the Medical Condition Exclusion cannot apply to Viera's Coumadin treatment; and (2) LINA waived its right to exclude coverage because it was on notice that Viera had an atrial fibrillation condition prior to issuing the AD & D Policy. These arguments are addressed in turn.

---

[11]    Plaintiff has raised the issue of LINA's conflict of interest concerning the decision to deny her benefit claim. As explained above, however, Plaintiff has presented no evidence as to the impact that this structural conflict had on LINA's exercise of discretion. Although the impact of the Glenn decision concerning the weight to be afforded a conflict of interest is not altogether clear, Glenn clearly provides that a plaintiff cannot merely point to the existence of a structural conflict, standing alone, in order to demonstrate that an administrator abused its discretion under ERISA. See Glenn, 128 S. Ct. at 2351 ("[C]onflicts are but one factor among many that a reviewing judge must take into account."). Without more, Plaintiff's reliance on the structural conflict does not dictate that LINA abused its discretion in denying Plaintiff's claim.

1.  Interpretation of the AD & D Policy

First, Plaintiff argues that LINA employed an improper
interpretation of the AD & D Policy, more specifically the
Medical Condition Exclusion provision.  The text of the Medical
Condition Exclusion provision provides that an exclusion of a
Covered Loss is permissible if the death:

> directly or indirectly, in whole or in part, is caused by
> or results from . . . [s]ickness, disease, bodily or
> mental infirmity, bacterial or viral infection or medical
> or surgical treatment thereof, except for any bacterial
> infection resulting from an accidental external cut or
> wound or accidental ingestion of contaminated food.

(Def.'s Mot. Summ. J. Ex. C. 32.)  Plaintiff's position is that
the plain meaning of this provision dictates that LINA can only
deny a claim where the Covered Loss (death) results from the
"medical or surgical treatment of a bacterial or viral
infection," and cannot exclude coverage based on the medical
treatment of sickness, disease, or bodily or mental infirmity.
In support of her interpretation, Plaintiff contends that the
Court should employ the last-antecedent rule and interpret any
ambiguities against LINA based on its status as the drafter of
the AD & D Policy.

The last-antecedent rule generally holds "that
qualifying words, phrases, and clauses are to be applied to the
words or phrase immediately preceding and not to others more
remote."  Stepnowski v. C.I.R., 456 F.3d 320, 324 (3d Cir. 2006)
(quoting United States v. Hodge, 321 F.3d 429, 436 (3d Cir.

- 23 -

2003)).[12] It must be noted that the last-antecedent rule is primarily a rule of statutory, rather than contractual, interpretation. The Third Circuit, however, has applied the last-antecedent rule for guidance in interpreting a provision of a life insurance policy. See J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 365-66 (3d Cir. 2004). In Pilosi, the Third Circuit recognized that the last-antecedent rule "is not an absolute and can assuredly be overcome by other indicia of meaning." Id. at 365 (quoting Barnhart v. Thomas, 540 U.S. 20, 124 (2003)). The Third Circuit held that the last-antecedent rule was not controlling in light of the indicia of meaning provided by the context of the policy surrounding the disputed provision.

As in Pilosi, although a strict application of the last-antecedent rule supports Plaintiff's interpretation, sufficient indicia of contrary meaning exist to overcome this maxim of interpretation. It is true that the placement of the comma immediately preceding the term "bacterial or viral infection" suggests that the term "medical or surgical treatment thereof" would not be extended to the other terms "sickness, disease, bodily or mental infirmity." The following indicia of meaning, however, are present to contradict this interpretation:

---

[12] Under the last-antecedent rule of construction, therefore, the series "A or B with respect to C" contains two items: (1) "A" and (2) "B with respect to C." Id. n.7.

(1) the term "Covered Accident" does not include an injury or accident "contributed to by disease, Sickness, mental or bodily infirmity"; (2) the cover page of the AD & D Policy states that it is a "group accident" policy and "does not pay benefits for loss caused by sickness;" and (3) the scope of the AD & D Policy deals with "accidental death and dismemberment."

Furthermore, in <u>Pilosi</u>, the Third Circuit recognized that the last-antecedent rule cannot be used to "contort the language beyond its limits" in light of the surrounding clause. 393 F.3d at 365. Applying Plaintiff's interpretation in accordance with the last-antecedent rule would limit LINA's ability to deny coverage based on the medical treatment of "bacterial or viral infection" but not for medical treatment of "sickness, disease or bodily or mental infirmity." Such a narrow reading would contort the language beyond its reasonable limits and create an interpretation that is inconsistent with the general purpose of the AD & D Policy. Simply put, Plaintiff's interpretation would create an unreasonable construction in that nothing contained in the AD & D Policy provides a basis for differentiating between medical treatment of a bacterial or viral condition and medical treatment of any other type of medical condition, namely atrial fibrillation.

Based on the contextual clarity provided by examining the surrounding language, sufficient indicia of contrary meaning

exists to trump application of the last-antecedent rule.

Similarly, Plaintiff's argument that the inherent ambiguity in the Medical Condition Exclusion provision should be construed against LINA, and therefore LINA's interpretation is an abuse of discretion, is not persuasive. It is true that where the Court finds that an ambiguity exists in an insurance policy, it should generally construe the policy provisions against the insured as the drafter of the contract. 12th Street Gym, Inc. v. Gen. Star Indem. Co., 93 F.3d 1158, 1166 (3d Cir. 1996); Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F. Supp. 1090, 1093 (E.D. Pa. 1994). An insurance contract is ambiguous where it "(1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning." Lawson v. Fortis Ins. Co., 301 F.3d 159, 163 (3d Cir. 2002) (quoting Cury v. Colonial Life Ins. Co. of Am., 737 F. Supp. 847, 853 (E.D. Pa. 1990)).[13]

As explained above, Plaintiff's proposed construction limiting the Medical Condition Exclusion only to medical treatment of bacterial or viral conditions does not comport with a reasonable interpretation of the AD & D Policy. Therefore, the

---

[13]     This definition of ambiguity is imported from Pennsylvania law. Both parties have cited to Pennsylvania law and neither party has suggested the application of another forum's law. Therefore, this Memorandum applies Pennsylvania law throughout, unless otherwise indicated, to the issue of contract interpretation.

Court concludes that the Medical Condition Exclusion provision is not reasonably susceptible to differing interpretations and does not have an obscure or double meaning.  Under these circumstances, Plaintiff has failed to demonstrate that LINA's interpretation of the Medical Condition Exclusion provision, and corresponding denial of benefits, was an abuse of discretion. See generally Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (Under Pennsylvania law, "[w]hen the language of an insurance contract is clear and unambiguous, a court is required to enforce that language.") (internal citation omitted).

2. <u>Waiver</u>

Alternatively, Plaintiff argues that LINA's denial of her claim was an abuse of discretion because LINA waived the right to exclude coverage because it was on notice that Viera had an atrial fibrillation condition.

At the outset it must be noted that mixed authority exists as to whether the doctrine of waiver is viable in ERISA proceedings, with the Fourth and Second Circuit expressly declining to incorporate it, and the Fifth, Seventh and Eleventh Circuits considering its application, with only the Fifth Circuit actually applying the doctrine.  See White v. Provident Life & Acc. Ins. Co., 114 F.3d 26, 29 (4th Cir. 1997) (the common law of ERISA "does not incorporate the principles of waiver and estoppel."); Juliano v. Health Maintenance Organization of N.J.,

Inc., 221 F.3d 279, 288 (2d Cir. 2000) ("where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable"); Pitts v. Am. Sec. Life Ins. Co., 931 F.2d 351, 357 (5th Cir. 1991) (holding that by accepting premiums and paying medical expenses after it had learned of a breach of the policy conditions, an insurer waived its right to assert that breach as a defense to coverage); Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 647-48 (7th Cir. 1993) (declining to apply waiver to bar an insurer from denying coverage under a group policy when it mistakenly notified plaintiff that the coverage on his life insurance policy was extended without cost to him after he suffered a disabling illness and could no longer work); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347-49 (11th Cir. 1994) (holding that insurer did not knowingly and intentionally waive eligibility requirements of its plan when insurer enrolled plaintiff in the insurance program, initially accepted premiums, and converted his life policy upon his request, despite apparent ineligibility).

There is no controlling precedent on this issue from the Third Circuit and no consensus exists among courts within this circuit as to if and when waiver is applicable in an ERISA action. See Kaelin v. Tenet Employee Ben. Plan, No. 04-2871, 2006 WL 2382005, at *7 (E.D. Pa. Aug. 16, 2009) (noting that no

precedent exists in the Third Circuit as to whether the common law principle of waiver applies in the ERISA context); <u>McLeod v. Hartford Life and Acc. Ins. Co.</u>, No. 01-4295 2004 WL 2203711, at *3 (E.D. Pa. Sept. 27, 2004) (explaining that no consensus exists within the Third Circuit as to whether waiver applies in the ERISA context and noting that courts in the Eastern District of Pennsylvania have conducted a case-by-case approach in determining whether waiver should apply); <u>Pergosky v. Life Ins. Co. of N. Am.</u>, No. 01-4509, 2003 WL 1544582, at *6 (E.D. Pa. Mar. 24, 2003) (same) (collecting cases).   Under the case-by-case approach employed by courts within this district, courts have refused to apply the principle of waiver where it would it would expand the scope of coverage under the ERISA plan.   <u>See</u> <u>McLeod</u>, 2004 WL 2203711, at * 3 (applying waiver where it would not expand coverage beyond the provisions of the relevant plan); <u>Perogsky</u>, 2003 WL 1544582, at *6-7 (refusing to apply waiver where it would apply insurance coverage to an otherwise ineligible participant).

In accordance with the approach adopted by other courts in this circuit, the Court declines to apply the principles of waiver to the instant case on the basis that adopting Plaintiff's waiver argument would expand the coverage of the AD & D Policy to allow an otherwise ineligible participant to receive a benefit under the applicable plan.   Even assuming <u>arguendo</u> that the Court

considers Plaintiff's waiver argument, Plaintiff cannot establish "the intentional relinquishment or abandonment of a known right" required to demonstrate a waiver.  See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 225 (3d Cir. 2007) (quoting United States v. Olano, 507 U.S. 725, 733 (1993) (defining waiver)).  Defendant asserts that Viera's disclosure of the atrial fibrillation condition relied upon by Plaintiff was on the application form for Viera's life insurance policy and not the AD & D Policy.  (See Def.'s Mot. Summ. J. Ex. C. 209-10.)  Plaintiff concedes that the disclosure of this condition was limited to the application for life insurance, but requests that the Court take judicial notice of the fact that this disclosure form for Viera's life insurance policy was also attached to Viera's application for the AD & D Policy.  Plaintiff submits no evidence in support of this request for judicial notice.  Absent additional information from Plaintiff warranting the Court to take judicial notice of the disclosure of his atrial fibrillation condition, Plaintiff has presented insufficient evidence to support her waiver argument.

## IV.  CONCLUSION

Based on the reasons set forth above, the Court concludes that the appropriate standard of review is abuse of discretion and that because a reasonable basis existed for LINA's

denial of Plaintiff's claims, no abuse of discretion occurred. Therefore, Defendant's motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied.  An appropriate order follows.