IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HETTY A. VIERA, as the          :    CIVIL ACTION
executrix of THE ESTATE OF      :    NO. 09-3574
FREDERICK A. VIERA, and HETTY   :
A. VIERA, individually,         :
                                :
     Plaintiff,                 :
                                :
     v.                         :
                                :
LIFE INSURANCE COMPANY OF       :
NORTH AMERICA,                  :
                                :
     Defendant.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        May 14, 2012


I.   **INTRODUCTION**

          Plaintiff Hetty Viera ("Plaintiff") brings this action

pursuant to the Employee Retirement Income and Security Act

("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (2006), seeking payment of

benefits under an accidental death and dismemberment policy

arising from the death of her husband, Frederick Viera

("Viera").  Defendant Life Insurance Company of North America

("Defendant") denied benefits under the accidental death and

dismemberment policy.  The case is on remand to this Court from

the United States Court of Appeals for the Third Circuit.

          Currently before the Court is Plaintiff's request for

additional discovery in order for the Court to conduct a de novo

review of Defendant's denial of benefits.  For the reasons that
follow, the Court will deny Plaintiff's request.


**II.  BACKGROUND**

On October 14, 2008, Viera was involved in a
motorcycle accident in Grand Junction, Colorado.  Viera suffered
serious injuries as a result of the accident.  He was treated at
St. Mary's Hospital and Medical Center ("St.Mary's") for
approximately three hours and was subsequently pronounced dead.

On the date of his death, Viera maintained two
insurance policies, which were purchased on his behalf by his
employer, Hornbeck Offshore Operators, L.L.C.  These insurance
policies consisted of an employer-provided life insurance
policy, and an employer-provided accidental death and
dismemberment policy (the "AD & D Policy" or the "Policy").  The
claims administrator for each of these policies is Defendant.
Only the AD & D Policy is the subject of the instant litigation.

Viera had a pre-existing chronic condition known as
atrial fibrillation before Defendant issued the AD & D Policy.
See Def.'s Br. in Supp. of Mot. for Summ. J. Ex. C, at 123-25,
210, ECF No. 29.  As part of the medical treatment for his

atrial fibrillation, Viera received a medication called Coumadin (also known as Warfarin).[1] See id. at 135-38.

Plaintiff is Viera's wife and the executrix of his estate.  On November 3, 2008, Plaintiff submitted a claim for benefits under the AD & D Policy to Defendant, but Defendant denied this claim.[2]  Defendant's position was that Viera's death was not a covered event under the express terms of the AD & D Policy.  One relevant provision of the AD & D Policy, defines a "Covered Loss" as:

A loss that is all of the following:

1. the result, directly and independently of all other causes, of a Covered Accident;
2. one of the Covered Losses specified in the Schedule of Covered Losses;
3. suffered by the Covered Person within the applicable time period specified in the Schedule of Benefits.

Id. at 27 (emphasis in original).  Another relevant provision of the AD & D Policy defines a "Covered Accident" as:

A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or a Covered Loss and meets all of the following conditions:

_____

[1]    Coumadin, known generically as warfarin sodium, is the brand name of a blood-thinning drug prescribed for the prevention and treatment of blood clots.  See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 396 (3d Cir. 2000).

[2]    Plaintiff also submitted a claim under Viera's life insurance policy and received $350,000 from Defendant on account of that claim.

> 1.   occurs while the Covered Person is insured under this Policy;
> 2.   is not contributed to by disease, Sickness, mental or bodily infirmity;
> 3.   is not otherwise excluded under the terms of this Policy.

Id.  The AD & D Policy also contains a provision that specifically excludes the following from a claim for benefits:

> [A]ny Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from . . . [s]ickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food.

Id. at 32.  Defendant contends that this exclusion (the "Medical Condition Exclusion") dictates that Viera's loss was excluded from coverage under the AD & D Policy.  More specifically, Defendant denied Plaintiff's benefit claim on the ground that Viera's Coumadin treatment complicated his medical treatment and constituted a contributing factor to his death after his accident.

After Defendant denied Plaintiff benefits at the administrative level, Plaintiff filed suit on July 10, 2009. The parties submitted cross-motions for summary judgment.  On April 6, 2010, upon consideration of the parties' cross-motions for summary judgment, the Court granted Defendant's motion for summary judgment and denied Plaintiff's motion for summary judgment.  In doing so, the Court evaluated Defendant's denial

of benefits under the deferential abuse of discretion standard
because the policy language in the plan stated that proof of
loss must be "satisfactory to [Defendant]." Viera v. Life Ins.
Co. of N. Am., No. 09-3574, 2010 WL 1407312, at *4 (E.D. Pa.
Apr. 6, 2010).  Applying the abuse of discretion standard, the
Court concluded that the evidence supported Defendant's decision
to deny benefits because there was reasonable medical evidence
that the death was caused, at least in part, by Viera's use the
blood thinner Coumadin.  Id. at *7-8.  The Court reached this
conclusion despite the fact that Plaintiff's expert, Dr. Aaron
Gindea, opined that Viera's death was not directly or indirectly
caused by Coumadin.  See id. at *8 (stating courts in ERISA
context "have recognized that the decision of a plan
administrator will not be deemed an abuse of discretion merely
because it chooses among competing medical opinions").

       In addition, the Court denied Plaintiff's motion for
summary judgment based upon an interpretation of the Policy.
Specifically, the Court held that the Medical Condition
Exclusion in the Policy excluded from a Covered Injury or Loss
such injuries or losses that were directly or indirectly, in
whole or in part, caused by medical or surgical treatment of any
of the following: sickness, disease, bodily or mental infirmity,
or bacterial or viral infection.  See id. at *11 (rejecting
Plaintiff's argument that phrase "medical or surgical treatment

5

thereof" applied only to "bacterial or viral infection[s]" and not entire list of ailments).

On appeal, the Third Circuit held that the Court erroneously reviewed Defendant's decision under the abuse of discretion standard and remanded the case for the Court to review de novo whether Defendant properly denied benefits.  See Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 418 (3d Cir. 2011).  The Third Circuit also, however, affirmed the Court's interpretation of the Medical Condition Exclusion.  Id. at 419-20.  After the Third Circuit remanded to this Court, the Court held a status and scheduling conference.  At that conference, the Court ordered the parties to submit briefing on how the Court is to conduct this de novo review.  Both parties submitted briefs to this Court, and the matter is now ripe for disposition.


**III. DISCUSSION**

The Court asked the parties to inform it on the following: (1) how does the Court perform a de novo review in an ERISA case; (2) is further discovery permitted; if so, what discovery should the Court allow; and (3) what is the next dispositional step in this case: summary judgment, bench trial, or jury trial.  The Court addresses each in turn.

A.   De Novo Review in ERISA Cases

        The parties largely agree on the Court's standard of
review in this case.  Specifically, the Third Circuit stated,
"On remand, the District Court must determine whether LINA
properly denied Plaintiff recovery under the Policy." Viera,
642 F.3d at 418.  Viera provides that on de novo review "the
role of the court is to determine whether the administrator . .
. made a correct decision." Id. at 413 (omission in original)
(internal quotation marks omitted).  The Court gives the
administrator's decision no deference and reviews the record to
"determine whether the administrator properly interpreted the
plan and whether the insured was entitled to benefits under the
plan." Id. at 414 (internal quotation marks omitted).  The
parties disagree whether the Court should consider any
additional evidence beyond the record before the administrator
and Dr. Gindea's report when conducting this de novo review.

B.   Additional Discovery

        The Court must first decide whether on de novo review
it may allow supplementation of the record.  And, if such
supplementation is allowed, what, if any, discovery should take
place.  As the Court already construed the Medical Condition

Exclusion, and the Third Circuit affirmed, the only issue
remaining is whether Viera's Coumadin treatment contributed to
his death.  Viewing the case through this lens, the Court turns
to consider what, if any, additional evidence is needed, or
allowed, to resolve the parties' dispute over Viera's cause of
death.

> 1.   Whether the Court May Consider Additional
>      Evidence

It is clear that <u>Viera</u> permits the Court to consider
additional evidence.  The Third Circuit provides that the Court
may base its de novo review on "any information before the
administrator initially, as well as any supplemental evidence,
such as Dr. Gindea's report."  <u>Id.</u> at 418 (internal citation
omitted).  On remand, the Third Circuit did not, however,
expressly provide guidance on whether the Court should allow
supplementation in this case.  In determining what, if any,
additional evidence to allow, the Third Circuit's decision in
<u>Luby v. Teamsters Heath, Welfare, and Pension Trust Funds</u> is
instructive.  944 F.2d 1176 (3d Cir. 1991).

In <u>Luby</u>, the court was deciding between two
beneficiary claimants.  <u>Id.</u> at 1179.  That case involved the
question of who was the proper beneficiary to the deceased's
insurance policy.  There was no evidentiary record except for

two beneficiary cards naming two different beneficiaries.  Id.
at 1179.  The administrator performed no additional
investigation.  Therefore, the district court allowed additional
evidence because there was simply no record on which the court
could perform a de novo review.  The Third Circuit in affirming
the district court's reliance upon additional evidence ruled,
"[A] district court exercising de novo review over an ERISA
determination between beneficiary claimants is not limited to
the evidence before the Fund's Administrator."  Id. at 1184-85.
The Third Circuit cautioned, however:

> Our decision does not require that a district court
> conduct a de novo evidentiary hearing or a full trial
> de novo in making a determination between ERISA
> claimants.  If the record on review is sufficiently
> developed, the district court may, in its discretion,
> merely conduct a de novo review of the record of the
> administrator's decision, making its own independent
> benefit determination.

Id. at 1185 (emphasis added).  When reviewing de novo a decision
of the plan administrator, it is within the discretion of this
Court to expand the record as needed or proceed on the basis of
the previously developed record.  Thus, in this case the Court
must determine whether, in its discretion, the record is
sufficiently developed to make an independent benefit
determination.  Accord Viera, 642 F.3d at 418 (stating this
Court may consider supplemental evidence).

2.  <u>What Additional Evidence the Court Should Permit</u>

With respect to what, if any, additional evidence the Court should allow in this case, Defendant argues that the record is sufficiently developed and the record needs no supplementation.  Specifically, the Court has Plaintiff's entire 262-page claim file.  In addition, the Court may consider Dr. Gindea's report.[3]  The Court may also consider the full administrative record.  This record contains medical reports, the Policy, the death certificate, the autopsy report, and the emergency room records from St. Mary's.  Any additional information the Court considers, Defendant argues, would not be a review of the administrator's decision at all, as the administrator did not have the opportunity to review the additional information during the claims process.

Plaintiff argues that the Court should permit additional discovery in this matter.  Plaintiff requests the following additional discovery: (1) the entire claim file, (2) Defendant's claims manual, and (3) the deposition of Claims Adjuster Renee Worst.  Specifically, Plaintiff believes that the Court should reopen discovery so Plaintiff can obtain her entire

---

[3]     The Third Circuit's opinion in <u>Viera</u> does not mandate the use of this report, explaining that the Court <u>may</u> look at supplementary evidence.  642 F.3d at 418.  Defendant does not object to the Court's use of this report, however.  And indeed, the Court considered this report in this disposition Defendant's motion for summary judgment.  <u>See</u> <u>Viera</u>, 2010 WL 1407312, at *8.

claim file because Defendant "itself has determined which
portions of its own record are relevant in this matter," and she
requests Defendant's entire file and claims manual to ensure
that the record is full and complete.  See Pl.'s Br. in Supp.
Relative to the Issues Raised by the Honorable Judge Robreno's
Order 5, ECF No. 47 [hereinafter Pl.'s Br.].  Plaintiff also
requests the deposition of Claims Adjuster Renee Worst to
determine if she "properly and adequately developed an
administrative record."  Id. at 6.

> a.   Adequacy of the record

        In considering whether the record is adequately
developed, the Court looks to the claims involved, the record
currently before the Court, and then makes a determination as to
whether the record will allow the Court to "determine whether
the administrator properly interpreted the plan and whether the
insured was entitled to benefits under the plan."  Viera, 642
F.3d at 414; see Luby, 944 F.2d at 1184-85 (holding
supplementation of record appropriate when there was no record
at all before administrator).

        With respect to the evidence that Plaintiff seeks now
– that is, Plaintiff's "entire file," Defendant's claims
handbook, and the deposition of the claims adjuster – the Court
finds none of this evidence will assist its de novo review.  In

this case, the Court must construe the Policy – and in that endeavor the Third Circuit affirmed the Court's previous interpretation.  See Viera, 642 F.3d at 418-20.  Then, the Court must determine whether the facts of the case permit recovery under the Policy.  Here, the dispute is whether or not the Coumadin or the accident contributed to Viera's death.  In this regard, the claims file already contains the medical report of Defendant's retained expert, Dr. Mark H. Eaton.  And, the Court will review Dr. Gindea's competing report.

Plaintiff's requested discovery does nothing to facilitate the Court's de novo review in this case.  The Court already has Plaintiff's claim file and Defendant indicates that there is no other file for this claim.  Plaintiff fails to articulate how the already provided claim file is deficient other than the conclusory statement that Defendant decides the contents of this file.

Production of Defendant's claims manual will also not assist the Court in its de novo review.  How claims adjusters go about deciding a claim, and whether or not the adjuster in this case followed some company procedure, is not relevant on a de novo review in this case.  The Court gives no "deference or presumption of correctness" to the administrator's decision. Id. at 414.  Therefore, whether or not the adjuster followed proper procedures will not affect the Court's calculus here.

12

Finally, Plaintiff's request to depose Claims Adjuster Worst in this case is also denied.  Plaintiff argues that Worst's deposition is necessary to determine whether Worst "adequately developed an administrative record."  Pl.'s Br. 6. Again, Plaintiff fails to articulate how the current record is inadequate, but seeks this discovery to hopefully find some inadequacy.  For reasons similar to those articulated above why the "entire file" should not be discovered, this side line journey of uncertain destination appears unlikely to lead to the discovery of admissible evidence.  See Fed. R. Civ. P. 26(b).

Moreover, the cases Plaintiff cites to argue that the Court should permit this discovery are all inapposite.  In Kalp v. Life Insurance Co. of North America, the court permitted the introduction of additional discovery into whether the administrator had any conflicts of interest.  No. 08-1005, 2009 WL 261189, at *7 (W.D. Pa. Feb. 4, 2009).  In this case, the Third Circuit's opinion expressly states that Plaintiff's claim that the plan administrator had a conflict of interest is not relevant under de novo review.[4]  See Viera, 642 F.3d at 418.

---

[4]     Plaintiff also cites to Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105 (1989).  That case, similar to Kalp, is about what evidence to consider in determining, under the abuse of discretion standard, whether the administrator had a conflict of interest.  See id. at 108.  Therefore, Glenn is also inapposite.

Plaintiff also cites to Bair v. Life Insurance Co. of North America, 263 F.R.D. 219 (E.D. Pa. 2009).  The court in Bair allowed the plaintiff to take the deposition of the defendant's appeals claim manager.  Id. at 225.  The court there allowed this discovery, even though the review was de novo, because the defendant admitted to a conflict of interest and the plaintiff claimed administrator bias.  Id.  Bair, however, preceded Viera and, therefore, the court did not have the benefit of the Third Circuit's views.  In Viera, the Third Circuit explicitly stated that because the Court will conduct a de novo review, "Plaintiff's argument regarding LINA's conflict of interest in being both the payor and administrator of benefits . . . is only pertinent to an abuse-of-discretion standard of review."  Viera, 642 F.3d at 418.  Therefore, additional evidence relevant to Defendant's alleged conflict of interest is not relevant in this case.

At bottom, Plaintiff's evidence will not assist the Court in conducting its de novo review of Defendant's denial of her benefits.  Therefore, while recognizing that the additional evidence might under some circumstances increase the "likelihood of an accurate decision," the possibility of increased accuracy here from Plaintiff's proposed discovery is quite speculative and it would come at the "price of increased cost, both in the form of more money and additional time."  Patton v. MFS/Sun Life

14

Fin. Distribs., Inc., 480 F.3d 478, 492 (7th Cir. 2007).  As one court put it, "[t]he record calls for additional evidence only where the benefits of increased accuracy exceed the costs."  Id. That is not the case here.

b.   Policy considerations of whether to supplement the record

In addition to considering the adequacy of the record, the Court also looks to the competing policies under ERISA for guidance in whether to allow Plaintiff's additional discovery. In this regard, the Fourth Circuit's decision in Quesinberry v. Life Insurance Co. of North America is helpful.  987 F.2d 1017 (4th Cir. 1993).  In Quesinberry, the court permitted the review of additional evidence in a case where the plaintiff sought to collect proceeds from an accidental death policy purchased by his wife.  Id. at 1019-20.  In that case, Karen Quesinberry ("Quesinberry"), the deceased, was admitted to the hospital with a preliminary diagnosis of optic neuritis and multiple sclerosis.  Id. at 1020.  To confirm this diagnosis, doctors ordered her to undergo a computerized tomography scan ("CT scan").  Id.  Quesinberry was given 300 cc's of Renografin 60, a material that aided in the interpretation of the CT scan results.  Id.  Quesinberry had a reaction to the Renografin and died.  Id.  An autopsy revealed that Quesinberry had

15

neurosarcoidosis, "a disease characterized by inflammatory granulomata occurring in many tissues of the body." Id. at 1020, n.1.  The plaintiff, Quesinberry's husband, filed a claim for accidental death benefits claiming that his wife suffered an accidental death as a result of her reaction to the Renografin. Id. at 1020.  The defendant insurance company denied the claim based on its finding that the neurosarcoidosis was a preexisting condition that precluded the award of accidental death benefits. Id. at 1021.  At trial, the district court allowed testimony from experts on both sides, with the plaintiff's experts testifying that the Renografin itself caused Quesinberry's death and was not related to the neurosarcoidosis.  Id. at 1020.  The defendant's experts, however, testified that the neurosarcoidosis caused the Renografin to reach the blood-brain barrier and led to Quesinberry's anaphylaxis.  Id. at 1021.

In its opinion affirming the district court's consideration of additional evidence – specifically, expert testimony – the Fourth Circuit identified four distinct purposes of ERISA:

> [T]he need of promoting the interests of employees and their beneficiaries[,] . . . the concern that ERISA not be interpreted in a manner that would afford employees and beneficiaries less protection than they had before ERISA's enactment[,] . . . the goal of providing prompt resolution of claims and the concern that the district courts should not be made into substitute plan administrators.

Id. at 1025 (internal citations omitted).  When considering whether to permit evidence not before the plan administrator, the reviewing court should balance the above purposes of ERISA and "exercise its discretion . . . when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision."  Id. (emphasis added).  In that case, the issue was the cause of Quesinberry's death.  Id. at 1027.  The district court allowed live expert testimony regarding this cause of death to assess the experts' credibility, despite the expert reports already being in the record.  Id.  The court in Quesinberry concluded that the district court did not abuse its discretion in admitting this testimony.  Id.

        The Fourth Circuit's opinion in Quesinberry provides a useful framework for determining how this Court should exercise its discretion.  Quesinberry identified four goals of ERISA the Court should consider when deciding to allow additional evidence on de novo review of ERISA-governed benefits claims.  First, ERISA was enacted to promote the interests of employees and their beneficiaries.  See id. at 1025.  As the parties dispute Viera's cause of death, it would be in the interest of Viera's beneficiary, Plaintiff, for the court to allow evidence tending to show that the motorcycle accident was a sufficient cause of Viera's death.  Indeed, the Court will consider Dr. Gindea's

report, Plaintiff's expert.  But, Plaintiff has not put forth
any evidence or articulated how additional discovery concerning
the claims manual or the claim review process will assist the
Court in its determination of Viera's cause of death.
Therefore, this factor weighs against allowing Plaintiff's
additional discovery.

Second, Quesinberry notes that courts should not
interpret ERISA to provide less protection to employees and
beneficiaries than they had before its enactment.  See id.
Plaintiff would have been able to bring a state-court action,
such as breach of fiduciary duty or wrongful death, to litigate
the benefit denial if not for the existence of the ERISA claims
process.  Thus, this factor generally weighs in favor of
allowing additional evidence.  Yet again, however, Plaintiff
does not explain how her requested additional discovery will
assist the Court in this case and ensure a fair disposition.

The third purpose of ERISA identified by Quesinberry
is the goal of providing prompt resolution of insurance claims.
See id.  This factor weighs in favor of the exclusion of
supplementary evidence, which would require additional discovery
time.[5]  Finally, Quesinberry notes that under ERISA courts should
not become substitute plan administrators.  See id.  Ignoring

---

[5]        Viera died almost four years ago and the claims
process and this litigation has continued over a lengthy period.

18

the foundation laid out by the decision of the plan administrator would undermine Congress's intent to allocate decision making under ERISA to the administrative process. Therefore, this Court should not start the fact-finding process anew.  Rather, this Court should rely substantially on the administrative record, but only allow supplementation of evidence when there is a clear inadequacy in the record.  See Luby, 944 F.2d at 1185 (allowing additional evidence in case with no evidentiary record); see also Quesinberry, 987 F.2d at 1027.  As explained above, the record in this case is adequate for a de novo review.

On balance, the policy considerations identified in Quesinberry weigh in favor of proceeding with the currently established record, including Dr. Gindea's report.  In this case, the issue generally is whether Viera's accidental injury was a sufficient cause of his death, or whether he would have survived the accident absent his Coumadin treatment.  The record currently before the Court, including Dr. Gindea's report, is adequate and needs no supplementation for the Court to conduct its de novo review of Defendant's denial of benefits.[6]

---

[6]     Indeed, the facts in Quesinberry align with this case. The cause of death was disputed and the court there permitted expert testimony.  987 F.2d at 1027.  It is notable that the district court in Quesinberry did not allow supplementation of the record except for testimony of the parties' experts.

Accordingly, the Court will consider Dr. Gindea's expert report in its de novo review along with the claim file and administrative record, but will not authorize any additional discovery in this case.


C.   Next Step in the Litigation

Plaintiff argues that because the success of her claims rise and fall on the credibility of the medical experts, who contradict each other on the cause of Viera's death, the Court should conduct a jury trial.  Defendant, on the other hand, wishes to file a motion for summary judgment.  And, presumably if that motion is denied, proceed to a bench trial. In this case, it seems that the conflicting expert testimony will be highly relevant to the causation issue before the Court. Therefore, under the circumstances of this case, it would appear

---

Moreover, Plaintiff had several opportunities during the claims process to add to the record, but did not.  Without a more substantial showing of an inadequate record, supplementation now as a post hoc remedy is inappropriate.  See Holden v. Blue Cross & Blue Shield of Tex., Inc., No. 07-2008, 2008 WL 4525403, at *28 (S.D. Tex. Sept. 30, 2008) ("Conversely, a district court is on secure ground in refusing to consider evidence outside the administrative record if the party seeking to expand the record failed to demonstrate what new information such expansion would yield, or why the new evidence was not originally included in the administrative record." (citing Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir. 1992))).

that summary judgment serves no purpose other than additional litigation expense and delay.

Plaintiff argues that this case should proceed directly to a jury trial.  She argues that in ERISA cases that involve only legal questions rather than equitable ones, a jury trial is required in conformance with the Seventh Amendment. See Puz v. Bessemer Cement Co., 700 F. Supp. 267, 268 (W.D. Pa. 1988).  In this case, while it is doubtful that Plaintiff is entitled to a jury trial in an ERISA action, see Turner v. C.F. & I. Steel Corp., 770 F.2d 43 (3d. Cir. 1985), the Court need not reach this issue because Plaintiff stipulated to a bench trial.  Although, Plaintiff's Amended Complaint demanded a jury trial, Plaintiff then agreed and stipulated to strike her jury demand.  On November 5, 2009, the Court ordered this demand be stricken.  See Order, ECF No. 24.  Plaintiff does not mention, let alone offer argument, as to why the Court should now ignore the very order to which she consented and pursuant to which the case has been litigated.  Accordingly, to the extent a trial is necessary, a bench trial is all the parties are entitled to in this case.

## IV.  CONCLUSION

21

For the reasons set forth above, the Court will not permit Plaintiff additional discovery.  An appropriate order will follow.